718 So.2d 925 (1998)
Mark Allen NICHOLS, Appellant,
v.
Pauline BENTON and Dalis Whited, Appellees.
No. 96-4070.
District Court of Appeal of Florida, First District.
October 5, 1998.
Silas R. Eubanks of Eubanks & Barrett, Tallahassee, for Appellant.
Lisa Magill Foran and Michael T. Callahan of Callahan Law Firm, Tallahassee, for Appellees.
*926 PER CURIAM.
This appeal concerns a negligence action brought by Mark Allen Nichols (appellant) for damages he incurred when he was struck by a vehicle driven by Dalis Whited (appellee), and owned by Pauline Benton. Appellant seeks review of the trial court's order denying his motion for new trial, after a jury verdict in favor of defendants/appellees. Appellant has raised numerous evidentiary issues, and one issue involving the denial of a challenge for cause of a prospective juror. We reverse and remand for a new trial.
The basic facts giving rise to this appeal are quite simple and straightforward. On April 2, 1993, at approximately 7:30 p.m., appellant and his girl friend were walking with the flow of traffic on or along the side of Aenon Church Road, in Leon County, Florida. Appellant occupied the position closest to the traffic flow when he was struck by a Nissan pickup truck driven by Mr. Whited. Evidence at trial established that the impact broke the truck's rearview mirror, antenna, and windshield. Appellant sustained a closed head injury, and was rendered unconscious for a brief period. Testimony and still and video photographic evidence introduced at trial indicated that there were no sidewalks on either side of the roadway. At the point where the accident occurred, there was insufficient space on the other side of the road for pedestrian travel.
Since the occurrence of the accident, appellant has experienced seizures, headaches, cervical pain, and emotional problems. The record reflects that appellant's symptoms include a slowing of his mental processes, significant memory deficits, and impaired hand coordination. He has been diagnosed with closed head injury, traumatically induced seizures, and post-traumatic epilepsy. The treating physicians related these conditions to the head injury appellant suffered in the 1993 accident.
Appellant filed a motion in limine to exclude any evidence of his alleged past alcohol and marijuana use, on grounds that the evidence showed appellant's past or occasional current use of alcohol or marijuana did not cause his present medical conditions or affect his neuropsychological testing. Defense counsel argued that evidence of appellant's past alcohol and marijuana use was relevant to show that the use possibly affected his test results. The trial court excluded references to alcohol or marijuana use during jury selection, but ruled that if the door opened, the defense would have an opportunity to show that such evidence was relevant at trial.
Shortly before trial, the defense requested reconsideration of the court's ruling with regard to references to appellant's prior alcohol and drug use. As ground for admission of this evidence, defense counsel argued that the deposition testimony of appellant's treating neuropsychologist indicated that chronic use of alcohol and drugs could have an effect on the evaluation of a patient, and on the outcome of testing. The trial court ruled the testimony would be admitted to show that appellant's memory difficulties could be related to substance abuse, rather than to the head injury he sustained in the accident.
To be relevant, evidence must tend to prove or disprove a fact in issue. See Taylor v. State, 583 So.2d 323, 328 (Fla.1991), cert. denied, 513 U.S. 1003, 115 S.Ct. 518, 130 L.Ed.2d 424 (1994). See also § 90.401, Fla. Stat. ("Relevant evidence is evidence tending to prove or disprove a material fact.")
Otherwise relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence...." See § 90.403, Fla. Stat. (1993). The statute requires the trial court to balance the danger of unfair prejudice against the probative value of the evidence sought to be introduced. Application of the balancing test necessarily involves an exercise of discretion. See State v. McClain, 525 So.2d 420, 422 (Fla.1988).
In McClain, the defendant was charged with vehicular homicide while intoxicated. The blood test taken after the accident revealed a blood alcohol level of .14, and a trace of cocaine. The trial court granted the defendant's motion to suppress all reference to the presence of cocaine; the decision was affirmed by the Fourth District Court of Appeal. See State v. McClain, 508 So.2d *927 1259 (Fla. 4th DCA 1987). The supreme court approved the decision, noting the amount of cocaine was minimal and the chemist could express no opinion concerning whether it had any effect on the defendant's driving. The court observed that "McClain could have been seriously prejudiced in the eyes of the jury if it became known that he had ingested even a trace amount of cocaine." See McClain, 525 So.2d at 422.
In Edwards v. State, 548 So.2d 656 (Fla. 1989), the defendant was convicted of aggravated battery with a deadly weapon. The defense proffered cross-examination concerning the victim's prior drug use. The defense sought admission of the testimony for the purpose of impeaching the victim's credibility, and to show that her perception and memory would be so impaired by her drug use as to affect her recollection of events in issue at trial. The trial and appellate courts excluded the victim's proffered testimony that she had used drugs for twenty years, but had been "clean" for several years, and had successfully completed a program for heroin addiction. The victim also testified she was not using drugs when the incident occurred, and was not using drugs at the time of her trial testimony. The Florida Supreme Court held that evidence of drug use for the purpose of impeachment should be excluded
unless: (a) it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness's testimony; (b) it can be shown that the witness is using drugs at or about the time of the testimony itself; or (c) it is expressly shown by other relevant evidence that the prior drug use affects the witness's ability to observe, remember, and recount.
See Edwards, 548 So.2d at 658. Accord Clausell v. Buckney, 475 So.2d 1023, 1024 (Fla. 1st DCA 1985)(evidence of plaintiff's intemperate use of controlled substance inadmissible "in the absence of additional proof that such habits had relevancy upon plaintiff's condition at the time of the accident.") See also West v. State, 553 So.2d 254, 255 (Fla. 4th DCA 1989).
In the instant case, it is undisputed that appellant, a pedestrian, was struck by a vehicle driven by Mr. Whited. The issues at trial were whether Mr. Whited was all or partly responsible for appellant's injuries; whether appellant sustained a permanent injury as a result of the accident, and, if so, the extent of that injury; and the amount of appellant's damages. After the trial court granted the defense request to admit evidence of appellant's prior alcohol and drug use, defense counsel questioned appellant and other witnesses at considerable length on this subject. Appellant acknowledged that during his adolescence and early adulthood, he used alcohol and marijuana to excess. However, uncontroverted evidence was introduced that established that appellant's current use involves occasional consumption of beer after work, and use of marijuana that, at most, never exceeds once or twice a month.[1]
When the accident occurred, appellant was thirty-seven years of age, well beyond the period of early adulthood. Appellant was forty at the time of trial. Appellant's seizure disorder is treated with the anti-convulsants Dilantin and Tegretol. While taking these medications, appellant undergoes regular blood tests to determine the level of his liver enzymes. He is prohibited from all alcohol use while taking these prescription drugs. Indeed, medical evidence that appellant's liver enzymes remained stable, served as an indicator that he was not using alcohol or marijuana to the extent that it affected his condition.
Uncontroverted medical testimony established that only chronic daily use of marijuana will impair memory functioning, and that *928 even daily consumption of four to six ounces of alcohol would not affect neuropsychological test results. The evidence presented at trial indicated that appellant does not engage in daily marijuana use or daily consumption of alcohol. The trial court's decision to admit evidence relating to appellant's past use of alcohol and drugs allowed defense counsel to focus on appellant's marijuana and alcohol use throughout the trial, and to argue the matter extensively during closing argument.
Since no evidence was introduced which might show a connection between appellant's alcohol and marijuana use and the alleged brain damage for which damages were sought, there was no factual basis for the trial court's ruling.[2] The improperly admitted evidence concerning alcohol and drug use became such a feature of the trial, that we have serious questions concerning the fairness of the proceeding. There was no showing that appellant had been using drugs or alcohol at or about the time of the accident; there was no showing that appellant was using drugs or alcohol at the time that he gave his testimony; and there was no evidence that the prior drug or alcohol use affected appellant's ability to observe, remember, and recount. See Edwards; McClain. The evidence should have been excluded, because it had little or no probative value, and it seriously and unfairly prejudiced appellant in the eyes of the jury. Therefore, we must reverse the trial court's ruling to admit evidence of appellant's alcohol and drug use, and remand for a new trial on all issues.
Appellant has directed our attention to other evidentiary rulings which, taken individually, would not require reversal. However, for purposes of retrial, we caution the trial court and counsel that on retrial, no testimony should be admitted relating to appellant's period of community control, through cross-examination of appellant, of appellant's former wife, or any other witness. In addition, it was improper to admit Dr. Weinstein's deposition testimony in which Dr. Weinstein characterized appellant as a "street person"; and it was improper to admit Dr. Melichar's videotaped deposition in its entirety. Although Dr. Melichar, a radiologist, was listed by the defense as a fact witness, in his videotaped deposition, he rendered expert opinion testimony concerning the extent of appellant's injury. On retrial, the videotaped deposition should be excluded. If the defense wishes to present Dr. Melichar's testimony, the nature of his testimony must be disclosed to opposing counsel, so that counsel will have a fair opportunity to examine Dr. Melichar with regard to any opinions he expresses.
Accordingly, this cause is reversed and remanded with directions to afford appellant a new trial on all issues.
JOANOS and VAN NORTWICK, JJ., concur.
WOLF, J., concurs in result only without opinion.
NOTES
[1] In November 1995, one of appellant's co-workers observed appellant suffer a seizure while working on a roof. (Appellant is a construction worker.) Appellant was transported to the hospital emergency room, where he tested positive for an unquantified amount of cannabinoids. The emergency room physician testified that in her opinion, the seizure was not caused by the presence of cannabinoids. Other medical testimony indicated that one who is acutely intoxicated, is at risk of a seizure during the period of intoxication. However, the medical testimony also indicated there were no studies that marijuana use lowers the seizure threshold, making one more susceptible to a seizure.
[2] During cross examination of Dr. Clark, defense counsel elicited an affirmative response to a generic question as to whether "chronic drug and alcohol use by a man over ten years or so ... would have any effect on the outcome of his [neurological] testing." There was no evidence of appellant's chronic use; indeed, the uncontroverted evidence was to the contrary. Consequently, Dr. Clark's testimony does not provide a basis for the admission of evidence of drug and alcohol use.