900 So.2d 646 (2005)
Sylvester BROWN, Charles Christopher Whiting, and Jose Smith, Appellants,
v.
Susie FORD, Appellee.
No. 1D04-1525.
District Court of Appeal of Florida, First District.
March 30, 2005.
Rehearing Denied May 6, 2005.
*647 Tracy Raffles Gunn of Fowler White Boggs Banker, P.A., Tampa, for Appellants.
Scott E. Gwartney and Matthew K. Foster of Brooks, LeBoeuf, Bennett, Foster & Gwartney, Tallahassee, for Appellee.
PER CURIAM.
This is an appeal from a judgment awarding punitive and compensatory damages to the plaintiff for injuries sustained in an automobile collision. The collision occurred during a high speed police chase while two of the defendants attempted to avoid an arrest for sale of cocaine. We conclude that the trial judge erred in allowing the drug crime to become a feature of the trial for the automobile collision. Therefore, we reverse for a new trial on the plaintiff's claim for punitive and compensatory damages.
Sylvester Brown loaned his 1997 Jeep Cherokee to his nephew, Charles Whiting, who in turn permitted Jose Smith to drive the vehicle. While stopped at a convenience store later that evening, Smith sold $40 of crack cocaine to two undercover officers. Whiting was present during the sale.
When the sale was completed, an arrest team moved toward the Jeep. Smith saw the officers and drove away at a high rate of speed with Whiting in the passenger seat. The officers followed the Jeep initially, but eventually abandoned the chase when it became too dangerous to follow Smith, who was driving nearly 100 miles per hour on the wrong side of the road with no headlights.
Several blocks after the police officers had abandoned the chase, Smith lost control of his vehicle and crashed into the plaintiff's vehicle. Smith and Whiting fled the scene of the accident and were eventually apprehended. The plaintiff suffered injuries to her shoulder and neck, and underwent surgery following the accident.
Smith and Whiting conceded liability for the collision, and the case proceeded to trial for a determination of the defendants' liability for compensatory damages and Smith and Whiting's liability for punitive *648 damages. Smith filed a motion in limine to exclude evidence of the drug deal arguing that the specific events of the incident were irrelevant and unduly prejudicial, as they occurred prior to the police chase. This motion was denied. The trial judge ruled that the drug deal was an "attendant circumstance" which the jury could consider in awarding punitive damages.
Throughout the first phase of the trial, the plaintiff presented testimony from several witnesses regarding the drug sting operation, drug trafficking, and the dangers of drug dealing. This theme continued throughout plaintiff's closing argument. Whiting moved for a directed verdict on the punitive damages claim, arguing that there was insufficient evidence to conclude that he acted recklessly and that his only involvement in the accident itself was that of an uninvolved passenger. The trial court denied the motion.
The jury returned a verdict of $450,598.41, in compensatory damages against all three defendants, $100,000, in punitive damages against Whiting, and $300,000, in punitive damages against Smith. Each defendant filed a motion for new trial and for remittitur, and Whiting also renewed his motion for a directed verdict. The trial court denied all of the motions, commenting that the jury verdict as a whole did not shock the conscience of the court.
The parties agreed to reduce the judgment against Brown in accordance with section 324.021(9)(b)3., Florida Statutes, which limits damages if liability is based entirely on the ownership of a vehicle. See § 324.021(9)(b)3., Fla. Stat. (2001). Additionally, after determining that Smith and Whiting had no net worth, the trial court decided to remit their judgment for punitive damages to $100 each. The plaintiff elected a new trial on punitive damages in lieu of the remittitur.[1]
The defendants then filed this joint appeal contending that the trial court erred in allowing the drug sale to become a feature of the trial. Additionally, Whiting argues that the trial court should have granted his motion for a directed verdict on the plaintiff's claim for punitive damages.
Whether the evidence was sufficient to support an award of punitive damages against Whiting is a threshold issue, at least for the disposition of his appeal. If the trial court erred in denying the motion for a directed verdict, the remedy would be to reverse with instructions to enter a judgment for Whiting on that claim. He would not be required to stand trial again on the plaintiff's claim for punitive damages. Therefore, we address this issue first.
Punitive damages are based upon the nature, extent, and degree of a defendant's misconduct. See Chrysler Corp. v. Wolmer, 499 So.2d 823 (Fla.1986). In order to be entitled to an award of punitive damages, a complaining party must show that the defendant acted with malice, moral turpitude, wantonness, willfulness, or reckless indifference to the rights of others. Walsh v. Alfidi, 448 So.2d 1084, 1086 (Fla. 1st DCA 1984). In our view, the evidence against Whiting was sufficient to meet these standards.
Whiting argues that he should not be liable for punitive damages because he was merely a passenger in the car. However, contrary to his position on appeal, Whiting's liability was not based solely on a theory of vicarious liability. Evidence was presented of Whiting's active participation *649 in the drug transaction that ultimately led to the collision with the plaintiff's vehicle. Although there was no evidence that Whiting approved of Smith's decision to leave the scene of the drug sale at a high rate of speed, there was evidence that Whiting attempted to flee the scene of the accident on foot before eventually being apprehended by the police.
A motion for directed verdict should be granted only if no view of the evidence could support a verdict for the opposing party. See Auto-Owners Ins. Co. v. Hooks, 463 So.2d 468, 473 (Fla. 1st DCA 1985). In considering a motion for directed verdict, the court is required to evaluate the testimony in the light most favorable to the opposing party and every reasonable inference deduced from the evidence must be indulged against the moving party. Id. By this test, the evidence against Whiting was sufficient to withstand a motion for directed verdict. A jury could reasonably infer that Whiting was a joint participant in the reckless conduct that caused the collision. Therefore, we affirm on this issue.
Although we find no error in the denial of the motion for a directed verdict, we conclude that Whiting and Smith nonetheless are entitled to a new trial on liability for punitive damages and, if necessary, the amount thereof. The evidence of the drug sale was relevant to a determination of recklessness, but the trial court improperly allowed it to become a feature of the trial. At times during the trial, the case appeared to be more about the drug deal than it was about a motor vehicle collision.
The first five witnesses called by the plaintiff were officers involved in the drug sting operation, all of whom testified about drug trafficking and the dangers associated with drugs and drug dealing. Some of these witnesses went into detail about the nature of the narcotics trade and the procedures for conducting drug sting operations. Others testified that the location of the sale was an active drug area and that drug trafficking in that area had spawned a number of complaints from members of the community. This testimony took up the first full day of trial.
During the closing argument, plaintiff's counsel repeatedly stressed the hazards of drug dealing. He told the jury that bad things happen during drug transactions, and explained that "innocent civilians get shot when drug deals go bad." He further emphasized the fact that Whiting and Smith were involved in the sale of drugs for their own illicit financial gain. Counsel returned to this theme during the closing argument in the second phase of the trial in which the jury was asked to decide the amount of punitive damages. He explained that Smith and Whiting appeared to have no assets only because they were typical drug dealers who rarely put large assets in their own names. There is no doubt that the evidence of the drug deal was relevant. The problem is that the evidence was exploited in a way that invited jurors to use the defendants' misconduct and bad character as a basis for an award of damages.
The defendants contend that the evidence of the drug deal affected the jury's verdict on both punitive and compensatory damages. Although it is not clear whether the evidentiary error discussed above necessarily vitiated the compensatory damage award entered against the defendants, we believe the proper remedy would be to require a new trial on all issues. See White v. Burger King Corp., 433 So.2d 540 (Fla. 4th DCA 1983); see also DuPuis v. 79th Street Hotel, Inc., 231 So.2d 532, 536 (Fla. 3d DCA 1970) on reh'g (stating that "better practice and procedure requires that one jury determine both the compensatory and punitive damages"). But see *650 Stephens v. Rohde, 478 So.2d 862 (Fla. 1st DCA 1985) (remanding only for a new trial on punitive damages where the plaintiff alleged no error in the trial on compensatory damages nor the specific amount of the award).
For these reasons, we conclude that the defendants are entitled to a new trial on the issue of liability for both punitive and compensatory damages and, if necessary, a subsequent trial before the same jury to determine the proper amount.
Reversed.
ALLEN, VAN NORTWICK and PADOVANO, JJ., concur.
NOTES
[1] During oral argument, plaintiff's counsel expressed ambivalence as to whether the plaintiff would go forward with the new trial or accept the remittitur.