PER CURIAM.
This is an appeal from a final judgment entered against appellant in favor of appel-lee, Leonard A. Johnson, for $20,000 and in favor of appellee, Roberta Johnson, for $55,000. We reverse.
The present action arose out of an automobile accident on April 21, 1977 in which appellees’ vehicle was struck by appellant’s vehicle on Federal Highway in Boca Raton. Both appellees were injured in the accident. Prior to trial the parties entered into a written stipulation by which appellant admitted liability and the parties agreed that the sole issue for trial was the damages incurred by appellees.
At trial appellant called the investigating officer as a witness and inquired as to what physical evidence he had observed at the scene of the accident. On cross examination outside the presence of the jury appel-lees proffered the testimony of the officer that he spent 85 per cent of the time involved in his investigation with appellant, that he felt appellant was under the influence of alcohol, that he performed a roadside sobriety test on appellant, that appellant was unsteady on his feet, and that he arrested appellant. At the end of the proffer appellant’s counsel made the following objection:
*743 Your Honor, I don’t think it’s relevant at all; it’s obviously calculated to prejudice the jury or whatever on an issue that is irrelevant. Certainly he can perhaps testify as to the amount of time he spent in investigating the accident, but he certainly can’t talk about Mr. Neering, according to what he said. It’s also privileged. He made his decision on what he said. I think we’ve admitted liability, there’s no claim for punitive damages here; Mr. Neering’s incarceration is irrelevant and immaterial to any issues in this lawsuit and any testimony on that point is irrelevant and immaterial and obviously prejudicial.
Appellees’ counsel and the trial court made these remarks:
MR. SLINKMAN: He opened the door, physical evidence, and what he did at the scene, and I want to show he spent more time with Mr. Neering than he did investigating around the Johnson’s car, and it goes to his ability just to recollect and observe.
THE COURT: I think he did open the door, I think we can put in every evidence — He can’t testify, though, as to what his opinion was as to his conclusion about Mr. Neering’s state, or the results of the test, but I think it’s certainly relevant. He can testify he didn’t see any evidence and so forth, and it’s certainly relevant he may have been pre-occupied with Mr. Neering and the reason he was. But, whether he arrested him or charged him with that, or reached an opinion that he was under the influence, that I don’t think is admissible.
MR. SLINKMAN: Judge, I think it goes to how he left the scene.
Q (BY MR. SLINKMAN) Did you leave the scene with Mr. Neering?
A No, sir, I did not.
Q You didn’t put the handcuffs on him and place him under arrest yourself?
A I placed the handcuffs on him and placed him under arrest, and another officer transported him.
MR. SLINKMAN: I think it’s relevant insofar as he had to put him in a vehicle.
THE COURT: I think he can do all that without saying that he arrested him. Whatever he could do, whatever he could say, something as he doesn’t that he arrested him or convey that impression.
After the jury returned, the following took place:
Q (BY MR. SLINKMAN) Officer Sims, would it be fair to say that the time spent by you at the scene, you were pre-occupied with Mr. Neering and his condition?
A Yes, sir.
Q And would it be fair to say that probably 85 percent of your time at the scene was spent, not hear [sic] the Johnson’s vehicle, but over near Mr. Neering?
A Yes, sir.
Q And would you tell the jury what took up your time with Mr. Neering?
A In interviewing Mr. Neering-
MR. BRAGG: Excuse me, I would object. It talks about conversations he had with Mr. Neering?
Q (BY MR. SLINKMAN) Don’t tell us what anybody said, but did you interview Mr. Neering?
MR. BRAGG: I object, Your Honor.
THE COURT: You can’t say what he said. I don’t know whether you were beginning to, I don’t know whether you really were, but you can’t.
THE WITNESS: Okay, yes, sir.
THE COURT: Just what you observed.
THE WITNESS: Okay. In conducting the interview, and also in conducting a roadside sobriety test.
Q (BY MR. SLINKMAN) All right, sir. And did you have to observe Mr. Neer-ing?
A Yes, sir.
Q Was it dark that night?
A Yes, sir.
Q Was it well lit there, or did you have to use your flashlight and look in his eyes and that kind of thing?
*744 A I had to look in his eyes, sir.
MR. BRAGG: Excuse me, for the record I would object to this entire line of questioning as being immaterial and irrelevant.
THE COURT: Overruled.
Q (BY MR. SLINKMAN) And how long did it take you to administer the sobriety test to Mr. Neering?
A An approximately, between five and ten minutes.
Q And did you observe his ability to stand on his feet?
A Yes, sir.
Q And what was that?
A Unsteady.
MR. BRAGG: Same objection, and move to strike the answer as being irrelevant and immaterial.
THE COURT: I’ll sustain the objection.
MR. BRAGG: I’d like the jury instructed.
THE COURT: Please disregard the answer to the last question.
Q (BY MR. SLINKMAN) Did you have to call another police officer for assistance?
MR. BRAGG: Object, I think it-
MR. SLINKMAN: This goes to how he spent his time.
THE COURT: Let him finish his objection.
MR. BRAGG: It’s irrelevant and immaterial to any issues involved in this lawsuit, and it’s beyond the scope of direct examination and beyond the guidelines set by the court in the proffer.
THE COURT: Overruled.
THE WITNESS: No, sir, I did not. The cars had been dispatched with myself.
Q (BY MR. SLINKMAN) I see. And did you have to then conduct Mr. Neer-ing to another officer?
A Yes, sir.
Because the parties had stipulated that the sole issue to be tried was appellees’ damages, we fail to see how the giving of a sobriety test to appellant, or the officer’s having to look in appellant’s eyes was relevant. Further, although the trial court instructed the jury to disregard the answer that appellant was unsteady on his feet, it was improbable that the prejudicial impression resulting therefrom could have been eliminated.
In summary, the testimony as to appellant’s sobriety should not have been admitted and the high awards to appellees suggest that the jury may well have been influenced by the testimony as to appellant’s condition at the scene. Accordingly the cause is reversed and remanded for new trial.
REVERSED AND REMANDED.
LETTS, C. J., and BERANEK and GLICKSTEIN, JJ., concur.