SILBERMAN, Judge.
As the result of a vehicular collision, Linda J. Robles, as personal representative of the estate of Miguel A. Mercado, deceased, brought this wrongful death action against Aaron Swanson. Swanson appeals from the final judgment totaling over $6,000,000. We conclude that the trial court committed reversible error in allowing irrelevant and highly prejudicial evidence of Swanson’s drug use in the first phase of trial when he had admitted liability for both compensatory and punitive damages. Therefore, we reverse and remand for a new trial. The other two issues Swanson raises are moot in light of this disposition.
On October 19, 2008, Swanson was driving his truck when he collided with a vehicle owned by the City of Tampa that was parked in the striped median area of the road. City employee Miguel Mercado was standing at the rear of the city vehicle and unloading traffic counters. Swanson’s truck struck Mercado and caused his immediate death.
Mercado’s estate brought a wrongful death action against Swanson, seeking compensatory damages for his widow, Gloria Mercado, and compensatory and punitive damages for the estate (collectively referred to as the Plaintiff). Swanson filed motions to bifurcate the trial to prevent prejudicial evidence of his drug use from being admitted in the first phase of trial in which the jury would determine compensatory damages. He argued that the evidence of his drug use would inflame the jury and affect its deliberations regarding compensatory damages.
The trial court ruled that the trial would proceed in two phases, the first dealing with entitlement to compensatory and punitive damages and the second dealing with the amount of punitive damages. The trial court also denied the motions in li-mine and concluded that evidence of Swanson’s drug use was relevant to the Plaintiffs entitlement to punitive damages.
Shortly prior to trial, Swanson admitted that he was negligent and the sole proximate cause of the collision. He also admitted that he acted with gross negligence and conceded that the Plaintiff was entitled to punitive damages. Swanson then sought to exclude evidence of his drug use from the compensatory phase of the trial. He argued that because the Plaintiffs entitlement to punitive damages was conceded and no longer a jury issue, evidence of his drug use was no longer probative of any material issue of fact in the compensatory phase of the trial. He contended that the evidence of drug use should be admissible only in the second phase of trial when the jury determined the amount of punitive damages.
The trial court ruled that the evidence of Swanson’s drug use was admissible during the compensatory phase of trial. This ruling was based on the Plaintiffs argument that evidence of Swanson’s drug use was relevant to prove Mrs. Mercado’s compensatory damages because knowing that Swanson had engaged in such conduct and *917 gone unpunished increased her pain and suffering.
Because the trial court had ruled that the evidence of drug use would be admitted in the compensatory damages phase of the trial, Swanson withdrew his motion for bifurcation and stipulated to the trial being conducted in one phase. Swanson’s reasoning was that bifurcation had become pointless because the evidence of his drug use would come in during the first phase of trial even though it was only relevant to the amount of punitive damages; if the trial were bifurcated, the parties would have called the same witnesses back in the second phase to repeat their testimony regarding Swanson’s drug use.
At trial the Plaintiff presented evidence through numerous witnesses regarding Swanson’s drug use. The evidence showed that after the collision, which occurred at approximately 7:50 a.m., Swanson was sleep deprived and had in his system a generic form of Xanax, a trace amount of methadone, and a metabolite of marijuana. He also had a drink of alcohol the night before the collision. Swanson was a recovering heroin addict, he had missed a methadone treatment, and he was on his way to a methadone clinic at the time of the accident. In addition, marijuana was found in his truck.
A Plaintiffs expert testified to the synergistic effect of multiple substances and sleep deprivation on Swanson. The expert opined within a reasonable degree of pharmacological certainty that it was more likely than not that Swanson was impaired. The defense expert opined that it was speculation whether the combination of drugs in Swanson’s system would have impaired him.
When Mrs. Mercado testified as to her pain and suffering, she was asked if how her husband died affected her. She testified that her husband meant everything to her, but she did not specifically comment on the effect his death had on her based on the manner in which he died. In fact, it was not clear at trial that Mrs. Mercado was even aware of Swanson’s drug use.
The jury awarded compensatory damages of $18,104 to the estate for funeral expenses, $419,339.15 to Mrs. Mercado for loss of support and services, and $4,250,000 to Mrs. Mercado for pain and suffering. The jury awarded punitive damages of $1,500,000 to the estate. The jury found that Swanson was under the influence of alcohol or drugs to the extent that he was impaired at the time of the accident. Swanson filed motions for re-mittitur and a motion for new trial which the trial court denied. We agree with Swanson’s argument that the trial court committed reversible error in ruling that evidence of Swanson’s drug use was admissible in the compensatory damages portion of the trial and that a new trial is necessary.
The admissibility of evidence is within the trial court’s discretion, but the rules of evidence limit that discretion. Michael v. State, 884 So.2d 83, 84 (Fla. 2d DCA 2004); Shaw v. Jain, 914 So.2d 458, 460 (Fla. 1st DCA 2005). The rules of evidence provide for the admission of relevant evidence and define relevant evidence as “evidence tending to prove or disprove a material fact.” §§ 90.401, .402, Fla. Stat. (2011). And, even if relevant, evidence is inadmissible when “its probative value is substantially outweighed by the danger of unfair prejudice.” § 90.403.
When a defendant admits liability in an automobile negligence case and the only remaining issue is the amount of compensatory damages, evidence regarding the defendant’s sobriety should not be admitted into evidence. Neering v. Johnson, 390 So.2d 742, 744 (Fla. 4th DCA *918 1980); see also Shaw, 914 So.2d at 460 (determining that the plaintiffs use of marijuana was not relevant to her injuries and the evidence should not have been admitted). When a defendant admits the entire responsibility for an accident and only the amount of damages is at issue, evidence regarding liability is irrelevant and prejudicial. Metro. Dade Cnty. v. Cox, 453 So.2d 1171, 1172-73 (Fla. 3d DCA 1984) (citing Barton v. Miami Transit Co., 42 So.2d 849 (Fla.1949)). In Cox, the Third District determined that the defendant’s conduct was relevant to the jury’s determination when comparative negligence was an issue. Id. at 1173.
In the present case, Swanson admitted that he was negligent and the sole proximate cause of the accident. Evidence of Swanson’s drug use was highly prejudicial and could serve to inflame the jury against him. See Bromiing v. Lewis, 582 So.2d 101, 101-02 (Fla. 2d DCA 1991) (stating that evidence in medical malpractice suit of mother’s drug use while pregnant was not shown to be relevant and was highly prejudicial to the plaintiffs case); Mount v. Camelot Care Ctr. of Dade, Inc., 816 So.2d 669, 670 (Fla. 3d DCA 2002) (recognizing that evidence of prior drug use had the effect of inflaming the jury against a witness and depriving the plaintiff of a fair trial).
The evidence at trial showed that Mrs. Mercado’s compensatory damages for her pain and suffering resulted from the loss of her husband’s companionship and protection. The evidence of Swanson’s drug use was not relevant to the determination of Mrs. Mercado’s pain and suffering. In fact, on appeal, the Plaintiff has given up the theory argued at trial — that Swanson’s misconduct affected Mrs. Mercado’s mental anguish — to support the admission of evidence of drug use.
Rather, the Plaintiff now argues that evidence of Swanson’s misconduct was admissible in the first phase of trial as relevant to liability for punitive damages, relying upon W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502 (Fla.1994). In W.R. Grace the Florida Supreme Court held that
trial courts, when presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues at trial. At the first stage of a trial in which punitive damages are an issue, the jury should hear evidence regarding liability for actual damages, the amount of actual damages, and liability for punitive damages, and should make determinations on those issues. If, at the first stage, the jury determines that punitive damages are warranted, the same jury should then hear evidence relevant to the amount of punitive damages and should determine the amount for which the defendant is liable.
W.R. Grace, 638 So.2d at 506. Thus, in the first phase of a bifurcated trial, the jury hears evidence of liability for compensatory damages, the amount of compensatory damages, and liability for punitive damages. In the second phase, the jury then determines the amount of punitive damages. Id.
Here, Swanson admitted that he was negligent and the sole proximate cause of the collision. Unlike the situation in W.R. Grace, liability for compensatory damages was no longer at issue. Swanson also admitted that he acted with gross negligence and conceded that the Plaintiff was entitled to punitive damages. Thus, liability for punitive damages was no longer at issue. There was no reason to admit evidence of his drug use in a bifurcated first phase other than to inflame the jury and *919 increase the compensatory damages verdict.
Although not cited by the parties, we are aware of the Fourth District’s decision in Dessanti v. Contreras, 695 So.2d 845 (Fla. 4th DCA 1997). There, the defendants argued that the trial court erred in failing to bifurcate the issue of punitive damages from the issues of negligence and compensatory damages. Id. at 845. In their motion to bifurcate, the defendant driver and the defendant owner of the vehicle had asserted that the driver was willing to admit liability for punitive damages, although he would not admit the underlying fact of his intoxication. Id. at 846. The trial court denied the motion to bifurcate. The jury awarded compensatory damages against the driver and the owner of $1,000,000 and punitive damages against the driver of $110,000. On motion for remittitur, the trial court reduced the punitive damages award to $5,000.
The Fourth District stated that the defendants essentially sought a ruling that “evidence on liability for punitive damages was so prejudicial that it should not have been presented in the same proceeding” that determined compensatory damages. Id. at 847. The court stated that the bifurcation pursuant to W.R. Grace was intended to prevent “the prejudicial effect of introducing evidence of other punitive damage awards when the defense” theory was that the defendant’s actions did not warrant punishment. Id. at 846. According to the Dessanti court, W.R. Grace did “not compel bifurcation of issues so that the defendant can prevent prejudicial information regarding his liability for punitive damages from reaching the jury.” Id. at 847. The Fourth District determined that the failure to bifurcate financial issues from liability issues was harmless error as to the driver, noting his meager net worth and the fact that the trial court entered a remittitur on the punitive damages award. Id.
As noted previously, the court in W.R. Grace stated that “[a]t the first stage of a trial in which punitive damages are an issue, the jury should hear evidence regarding ... liability for punitive damages.” 688 So.2d at 506. We determine that it is consistent with the reasoning in W.R. Grace to prohibit evidence of liability for punitive damages from the first stage of a bifurcated trial when the defendant has unequivocally stipulated to liability, including for punitive damages, so as not to inflame the jury during its determination of compensatory damages. To the extent this opinion conflicts with Dessanti, we certify conflict.
In the second phase of a bifurcated trial, however, the evidence of Swanson’s drug use is relevant to the amount of punitive damages. The Plaintiff argues that although Swanson admitted liability for punitive damages, he did not admit that he was impaired at the time of the accident and that this was a liability issue based on the statutory cap on punitive damages. Punitive damages are generally limited to the greater of three times the amount of compensatory damages or $500,000. § 768.73(l)(a), Fla. Stat. (2008). Section 768.736 removes the cap on punitive damages if the jury finds that the defendant was impaired by drugs or alcohol. The issue of whether to cap punitive damages relates to the amount of damages, not to whether the Plaintiff is entitled to punitive damages at all. Therefore, Swanson’s impairment is relevant to a determination of the amount of punitive damages in the second phase of a bifurcated trial.
The ruling to allow evidence of Swanson’s drug use in the first phase of a bifurcated trial was highly prejudicial and that evidence was irrelevant based on the concessions Swanson made. In light of *920 those concessions, we reverse and remand for a new trial on all compensatory damages in phase one. In phase two the jury will consider and determine the amount of punitive damages.
Reversed and remanded; conflict certified.
NORTHCUTT and CASANUEVA, JJ„ Concur.